**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HENRY HORNER MOTHERS GUILD, et al., | |
| Plaintiffs, | No. 91 C 3316 |
| v. | Judge James B. Zagel |
| THE CHICAGO HOUSING AUTHORITY (CHA), an Illinois Municipal Corporation, et al., | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Plaintiffs filed a motion to enforce this court's order of April 5, 2010, in which they allege that the CHA's decisions denying the family split requests of Horner class members Camilla Rathers, Diane Fain, Dawnetta Bridges, and Lucritia Hampton run contrary to the requirements set forth in Paragraph 17 of the Horner Amended Consent Decree and to the balancing test adopted by this Court's order. They therefore ask the Court to order the CHA to grant the requests for family splits made by these Horner class members.

Defendants oppose Plaintiff's motion and argue that the Court did not adopt a balancing test but rather a case-by-case approach to deciding family split requests. They ask that the Court refer this dispute to the mediator in lieu of adjudication; if the Court declines to do so, Defendants ask (1) that the Plaintiff's motion be denied, and (2) that the Court allow the CHA to use the 2009 Admission and Continued Occupancy Policy ("2009 ACOP") at Horner Phase I. For the following reasons, Defendants' motion is granted in part and denied in part.

## II. FACT STATEMENT

On September 1, 1995, I approved an Amended Consent Decree ("Decree") binding Defendants, the Chicago Housing Authority et al., and Plaintiffs Henry Horner Mothers Guild et al., to the terms set forth therein. That Decree identified 933 families who lived at the development in April 1995. The goal of the Decree was to convert the Horner development from a hazardous low-income housing development to a mixed-income neighborhood consisting of new and renovated mid-rise and low-income, low-density homes. The revitalization project was to be completed in five phases. As part of that process, the Horner families were given their choice of replacement housing. Residents selected new units on the site of the old Horner project, new units built in the Horner neighborhood, and rehabilitated units at the Horner Annex, and scattered-site units throughout the city. Others selected section 8 vouchers providing subsidized units in existing buildings in the city and suburbs. As of 2008, all of the original Horner families had been provided their choice of new replacement housing.

> Paragraph 17 of the Horner Amended Consent Decree reads in relevant part:
>
> Where necessary to accommodate family housing needs, CHA and the Horner plaintiffs may agree to allow household members with children of their own to convert to principle leaseholder status and thereby obtain their own Horner Housing Certificate; provided that the Horner plaintiffs may petition the Court to authorize such conversions if CHA and the Horner plaintiffs are unable to agree.

On April 5, 2010, I granted in part and denied in part Plaintiff's motion to have CHA grant the family split requests of four Horner class members. Plaintiffs argued that the CHA had adopted a blanket policy of denying Horner class members requests for family splits. CHA denied this and contended that Paragraph 17 of the Decree vested discretion in the CHA to determine whether or not a split would be permitted, taking into consideration its desire to make efficient use of its

2

housing resources, to be fair to families also waiting for new units, and to alleviate overcrowding.

I found that the CHA did not have a blanket policy against family splits. While they clearly had a preference for denying such splits, I found their policy to be reasonable in light of the goals embodied in the Decree. Paragraph 17 of the Decree does not grant Horner Plaintiffs an absolute right to a split but does guarantee them a right to appeal a decision by the CHA and the Mediator to this Court. Therefore, I will review each Plaintiff's request for a family split in light of the facts presented to me. Neither prior CHA nor Mediator decisions are binding on my ruling.

The Plaintiffs now once again seek the Court's intervention to enforce family split requests by four Horner families. Under the 2003 Admission and Continued Occupancy Policy which governs Horner Phase I units, each family has become overcrowded in their current unit and requests a Housing Choice Voucher ("HCV") as their replacement housing. In each case, the CHA denied the split request and the families were placed on the waiting list for larger replacement units. Horner Plaintiffs Camilla Rathers, Diane Fain, Dawnetta Bridges, and Lucritia Hampton appeal to the court to order CHA to grant their split requests.

In response, the CHA seeks to have a uniform occupancy policy at all of its developments and so has also requested that the court grant them approval to use the updated 2009 Admission and Continued Occupancy Policy ("2009 ACOP") for Horner Phase I units. Only Horner Phase I uses the 2003 Admission and Continued Occupancy Policy ("2003 ACOP"). The 2009 ACOP currently governs all other traditional public housing units.

3

### a. Camilla Rathers

Camilla Rathers and her family (collectively "the Rathers") currently reside in a 4-bedroom unit. She has requested a split and an HCV for her daughter, Alocia Rathers, and Alocia's two children. The Rathers are overcrowded under the 2003 ACOP standards, but would not be under the 2009 ACOP. On July 21, 2010, CHA denied the request and added the family to the 5-bedroom waiting list. They are the sixth family on the list. The first person on the waiting list is a recent medical accommodation. The second person on the list has been waiting since September 2006 and the third has been waiting since October 2007.

### b. Diane Fain

The Fain family is currently in a 2-bedroom unit and Ms. Fain has requested a split and an HCV for her daughter, Beondria Fain, and Beondria's two children. They are overcrowded under the 2003 ACOP standards, but would not be under the 2009 ACOP. They are the fourth family on a 3-bedroom waiting list. They have been waiting for a larger replacement unit since July 2009.

### c. Dawnetta Bridges

The Bridges family is currently in a 4-bedroom unit and Ms. Bridges has requested a split and an HCV for her daughter, Jaunita Bridges, and Juanita's two children. They are overcrowded under the 2003 ACOP standards, but would not be under the 2009 ACOP. On August 3, 2010, their request was denied and they were added as number seven on the 5-bedroom waiting list. The second and third families have been waiting over three years for a 5-bedroom unit.

### d. Lucritia Hampton

Lucritia Hampton is currently in a 4-bedroom unit and has requested a split and an HCV for her daughter, Tilquilla Pinkston, and Tilquilla's three children. They are overcrowded under both the 2003 and 2005 ACOP standards. The CHA denied the request and placed them as number eight on a 5-bedroom waiting list on August 5, 2010.

## III. DISCUSSION

Plaintiffs argue that CHA has adopted a practice of denying family split requests in violation of Paragraph 17 of the Decree and has failed to apply the balancing test ordered by this Court's Order of April 5, 2010. They point here to the example of Elvie Tart, who was overcrowded in her 3-bedroom unit and requested a family split and an HCV for her daughter and her daughter's two children. In this instance, CHA approved Ms. Tart's requests because the wait for the HCV would be shorter than the wait for a 4-bedroom unit.

Plaintiffs also argue that CHA's citywide obligations do not trump its obligation to stick to its stated goal of keeping Horner's revitalized units "low density." Paragraph 17 requires the CHA to place overcrowded Horner families on the HCV special admissions waitlist, and deny that placing these Horner families on the special admissions waitlist would be impermissible under 24 CFR § 982.203.

In response, CHA denies that I ever established a balancing test in my 2005 Order and argues that even if I had, these particular plaintiffs would wait longer for an HCV than for a larger unit from the transfer waiting list. Because CHA can only issue a limited number per year, HCVs are a valuable and scarce commodity, and the average wait for a family receiving an HCV is 6.74 years. Finally, CHA asserts that federal regulation 24 CFR § 982.203 prohibits them from

allowing overcrowded Horner families to jump to the front of the waiting list.

    **a.    Balancing Test and 24 CFR § 982.203**

Plaintiffs' contention that I established a formal balancing test misconstrues my April 2010 Order. The language I used merely recognized the fact that the CHA is faced with balancing the needs of many low income families throughout the City of Chicago, and in doing so it is faced with deciding orders of priority. When CHA and Horner Plaintiffs cannot agree over a family split decision, I will review the particular situation and facts of each family. This can include a variety of reasonable considerations, including but not limited to wait time for a new unit, current and projected availability of replacement units, and the demand for CHA's limited resources by other families. As Plaintiffs are guaranteed a right of appeal from both the decision of the CHA and the mediator, I decline to refer this dispute to the mediator in lieu of adjudication.

Furthermore, I do not find the 24 CFR § 982.203, which regulates special admissions, inconsistent with Paragraph 17 of the Decree. A special admission includes "[a] family displaced because of demolition or disposition of a public housing project," *§ 982.203(b)(1)*. These Horner Plaintiffs were displaced and the Decree came about as a result of the demolition of Horner. Therefore, because the Plaintiffs qualify as special admissions, they are eligible for an HCV. Section 982.204 is not applicable here since this section applies only to those on the waiting list, and special admissions are considered non-waiting list participants. *§ 982.203* and *§ 982.204*.

    **b.    2009 ACOP for Horner Phase I**

The CHA also asks that the Court permit them to use the 2009 ACOP at Horner Phase I. These standards permit a leaseholder to insist on his or her own bedroom but then require two

6

persons per bedroom for the other units in the apartment.  Plaintiffs reply that use of the 2009 ACOP for Phase I Horner families would dilute Paragraph 17 of the Decree and create inconsistent standards for Phase I Horner residents.

I find CHA's desire to maintain uniform occupancy policies at all of its developments compelling.  While it is true that granting CHA's motion will result in different standards being applied to 2003 ACOP and 2009 ACOP Phase I Horner residents, it is likewise unfair to employ different occupancy standards for Phase I Horner residents and residents of the CHA's other public housing developments.   Therefore, going forward it is preferable to apply the more current 2009 ACOP to Phase I Horner families since it is used in all other traditional public housing units.

### c. Camilla Rathers, Diane Fain, Dawnetta Bridges

Because I find that the CHA may use the occupancy standards in the 2009 ACOP at Horner Phase I, Plaintiffs Camilla Rathers, Diane Fain, and Dawnetta Bridges are no longer considered overcrowded in their units and their requests for a family split are denied.

### d. Lucritia Hampton

Under the 2009 ACOP, Lucritia Hampton is overcrowded in her 4-bedroom unit.  Her family split and HCV requests were denied by the CHA and she was placed eighth in line on a 5-bedroom waiting list on August 5, 2010.

One of the CHA's stated goals for the Horner revitalized units is to keep them low density and reduce wear and tear.  Therefore, in my April 5, 2010 Order, I granted Odell Bradford's family split request because (1) he was fifth on the waiting list for a 3-bedroom unit and (2) there were no identifiable units for his family to move into.  Ms. Hampton is even lower

on the list than Mr. Bradford, and like in Mr. Bradford's case, the CHA has not identified any available 5-bedroom units. In addition, 5-bedroom units are scarcer than units of smaller size. I thus order Ms. Hampton's split request be granted. Like in Mr. Bradford's case, I note that if a 5-bedroom becomes available for the Hampton family prior to the family's split needs being met, the family should remain intact and transfer into the larger 5-bedroom unit.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion to enforce this court's order is granted on behalf of the Plaintiff Lucritia Hampton. It is denied for Plaintiffs Camilla Rathers, Diane Fain, and Dawnetta Bridges. Defendant's motion seeking approval to use the 2009 ACOP at Horner Phase I is granted.

ENTER:

James B. Zagel
United States District Judge

DATE: September 14, 2011