UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HENRY HORNER MOTHERS GUILD, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CHICAGO HOUSING AUTHORITY, et al., <br><br> Defendants. | No. 91 C 3316 <br> Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

In 1991, Plaintiffs sued the CHA over the conditions of one of CHA's properties—often called the Henry Horner Homes, named after the former Governor of Illinois. In 1995, a Consent Decree and an Amended Consent Decree laid out the Horner Revitalization Plan, a plan which would take many years to complete. The consent decrees also provided for payment of attorneys' fees for the work required to secure the consent decrees. CHA and HUD paid $440,000 in attorneys' fees and costs through August 14, about two weeks before the Amended Consent Decree was entered in this case.

What was clear to me—and to the parties and attorneys in the case—are: (1) the changes at Henry Horner would take a great deal of time to complete, (2) the parties would not be in complete agreement about each change, and (3) the parties would seek, from time to time, the intervention of the Court.

The Guild and their lawyers did first-rate work as they dealt with inevitable bumps in the road. "Bumps" is an inadequate description of the difficulties that arose, usually without assistance from the Court. We are, more than two decades after the suit's filing, close to the end of the Plan.

1

The instant disagreement over the Plan here involves the "Superblock." Leaving aside the precise details (and all of the Plan phases are filled with precise details), the CHA wanted to change the terms of the Decree for Superblock from a 100% public housing "island" into a mixed-income element of the larger mixed-income plan for Horner. The number of units (200) in the block would still exist, but some would be moved offsite. CHA's motion to allow the change was supported by the City of Chicago and the *Gautreaux* plaintiffs.

Plaintiffs opposed modification of the Decree, arguing that the block remain 100% public housing. They asserted that mixed-income in the block was unneeded and unwise; the Superblock did not require rehabilitation, and the increase in very low-income families there had not made things worse.

The contest over these CHA changes led to litigation beginning a few days before the end of 2011. The CHA filed a motion to amend the decree. Plaintiffs opposed the motion. Over time, the parties entered into settlement negotiations with my approval. The discussions, which included representatives of the *Gautreaux* plaintiffs, led to an agreed resolution. The settlement was explained to the affected residents in a town hall meeting and also in a series of meetings with smaller groups. In turn, the agreement was presented in court. After consideration of the terms, I entered 17 separate orders defining the duties of all the parties bound by the settlement. The Agreed Order was entered on November 13, 2013, signed by the Plaintiffs' attorneys, the U.S. Department of Housing and Urban Development, and the Chicago Housing Authority. Plaintiffs' attorneys now seek fees for their work on the Superblock dispute. The CHA contends that attorneys' fees cannot be awarded under the terms of the Amended Decree.

Thus, the issue to consider here is whether the work of Plaintiffs' attorneys on the Superblock controversy qualify for attorneys' fees. The earlier cases in this field would not fit on

the same page prior to 2001, which is when the Supreme Court disapproved the notion that attorneys' fees could be granted to lawyers who were simply "catalysts" of changes in the conduct of a defendant. To win the right to receive fees, the lawyers had to secure a change sanctioned by judicial action. A defendant who changes his actions voluntarily even if he does so at the request or demand of a plaintiff does not have to pay the plaintiff's attorney. *See Buckhannon Bd. & Care Home, Inc. v. W.V. Dep't of Health & Human Resources*, 532 U.S. 598 (2001). About three years later, our Court of Appeals held that post-decree attorney work does not, in itself, authorize pursuit and payment of fee awards. Where the decree does not specifically provide for such fees, they are not awardable. If the words of the decree do permit fee awards for specified work, then attorneys may petition for fees for that work. *See Alliance to End Repression v. City of Chicago*, 356 F.3d 767 (7th Cir. 2004).

In this case, the decree is not silent on the issue of post-decree attorneys' fees. Fees can be awarded here for whatever attorney work is specified in Paragraph 29 of the Decree as compensable. Paragraph 29 states:

> Defendants shall not be obligated to compensate plaintiffs for any work hereafter involving the day-to-day monitoring or routine administration of this Amended Decree, e.g. where plaintiffs bring violations of the decree to defendants' attention and they are rectified without substantial expenditure of time by plaintiffs' counsel; however, plaintiffs shall be entitled to recovery attorneys' fees from CHA and/or the federal defendants for: (a) work performed in obtaining from the Court any order against the CHA or federal defendants for the enforcement of this Amended Decree; and (b) any other work (arising out of what plaintiffs allege is CHA's and/or the federal defendants' non-compliance with the Decree) resulting in the provision of substantial relief under the Decree to the plaintiff class or to one or more members of the class, whether or not the work involves the initiation or conduct of any court proceedings.

Plaintiffs claim that Paragraph 29 rules out only one form of work as compensable and specifically allows two circumstances where compensation is possible. From this, they conclude

3

that otherwise unspecified circumstances for recovery of fees are allowable. This is so, Plaintiffs argue, because "there is no language [in 29] limiting fees to these two specific circumstances," i.e., 29(a) and 29(b).

This does not carry the day. From *Buckhannon/Alliance*, I find the right to seek post-decree fees and for what work must be specifically allowed. Post-decree fees are not to be received unless there is clear language setting forth the circumstances under which such fees are permissible. Here the language barring compensation for monitoring or routine administration does not open the door to all other claims for compensation. "No" to one is not a "yes" to everything else.[1]

Where post-decree fee awards can be sought, the attorneys' work must have caused a substantial change in the conduct of the defendant. Attorneys can be compensated for imposing new and meaningful obligations on the defendant. Changes that lead to nominal damages or insignificant benefits do not warrant an award of fees even when fees are permitted in the governing decree. Compensable work is that which forces a material alteration in the legal relationship of the parties—that is, non-minor changes in the conduct and duties of one or more parties. *See Sole v. Wyner,* 551 U.S. 74 (2007).

Finally, I believe that fees would not be awarded here even if they could be awarded. The key dispute between the parties was whether the Superblock should be 100% public housing. Plaintiffs lost their argument against any mixed-income housing. The Superblock will be rehabbed, which is another loss for Plaintiffs. The other issues presented insignificant changes. The number of offsite public housing, as opposed to onsite, does not appear to be material for Plaintiffs when they failed to win their case against rehabilitating the Superblock.

---

[1] It can be argued that a right to seek fees can be found in a past practice of paying fees for post-decree work, *see Gautreaux v. CHA*, 491 F.3d 649 (7th Cir. 2007). The history of this case would not support such a claim here.

That some families might return to the Superblock, the increase in onsite units (from 73 to 95) may please them, but given the work of rehabilitation, it will be quite a while before anyone can know for sure who among them will be eligible to return, if any, and who will want to return. We cannot even know if those who are eligible and want to return would need more than 73 units. The same thing is true of the effects of phased rehabilitation. The major disputes over Superblock change were won by the CHA; what is left over was not a major piece of the controversy, and the value to Plaintiffs of that piece will not be known until the end of 2015 or later.

    The bottom line is Plaintiffs would not win attorneys' fees for their work had the Decree permitted them to seek the fees at issue here.

    Accordingly, the petition for attorneys' fees is denied.

ENTER:

*[signature: James B. Zagel]*

James B. Zagel
United States District Judge

DATE: March 2, 2015